NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAFTALI JACOBOWITZ<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>Defendants. | Civil Action No.: 19-20120<br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court on the motion to compel arbitration and stay proceedings (the "Motion") of Defendant Discover Financial Services Inc. ("Defendant" or "Discover"). ECF No. 40.  Plaintiff Naftali Jacobowitz ("Plaintiff) filed a brief in opposition (ECF No. 45) and Discover replied in support of the Motion (ECF No. 52).  The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, Defendant's Motion is granted.

## I.    BACKGROUND

Plaintiff filed the complaint (the "Complaint") in this action on November 13, 2019, asserting claims for violations of the Fair Credit Reporting Act ("FCRA") against defendants Experian Information Solutions, Inc. ("Experian"), Transunion, American Honda Finance Corporation ("Honda"), Barclays Bank Delaware ("Barclays"), Santander Consumer USA ("Santander"), and Discover.[1] ECF No. 1 at 1–4.  Plaintiff alleges that each defendant

---

[1] Plaintiff has dismissed his claims against Santander, Transunion, Experian, and Honda. ECF Nos. 36, 57, 66, and 70. Additionally, on September 23, 2020 the Court issued an Opinion and Order granting Barclays' motion to dismiss and allowing Plaintiff thirty (30) days to replead his claims against Barclays. ECF Nos. 61–62.  Plaintiff has not filed an amended complaint as of the date of this Opinion.

furnished inaccurate information to Experian and Transunion and that Experian and Transunion used this inaccurate information to compile false credit reports concerning Plaintiff. ECF No. 1 at 4–11.  Plaintiff further alleges that he notified Experian of the inaccuracies in his credit report on May 10, 2019, and that neither Experian nor any of the other defendants conducted a reasonable investigation or attempted to resolve the discrepancies he identified in his credit report. Id.  Plaintiff claims that as a result of the inaccurate information listed on his credit report, "Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial." Id. at 14.  The Complaint asserts two causes of action against Discover:  willful violation of FCRA (count 5) and negligent violation of FCRA (count 6). Id. at 18–21.

In its Motion, Discover argues that Court should not reach the merits of Plaintiff's FCRA claims because Plaintiff's claims against Discover are "covered by an enforceable arbitration agreement." ECF No. 40-1 at 1.  Discover states that it is uncontested that Plaintiff opened a credit card account with Discover in 2014 that is governed by a cardmember agreement (the "Cardmember Agreement") and that the Cardmember Agreement, which is governed by applicable Federal law and Delaware law, contains the following arbitration clause (the "Arbitration Clause") that applies to the instant claims:

> **Agreement to Arbitrate.** If a dispute arises between you and [Discover], either may choose to resolve the dispute by binding arbitration, as described below, instead of in court. Any claim (except for a claim challenging the validity or enforceability of this arbitration agreement, including the Class Action Waiver) may be resolved by binding arbitration if either side requests it. This includes claims and disputes relating to any other Account or agreement you have or had with us. THIS MEANS IF EITHER YOU OR WE CHOOSE ARBITRATION,

> NEITHER PARTY SHALL HAVE THE RIGHT TO
> LITIGATE SUCH CLAIM IN COURT OR TO HAVE A
> JURY TRIAL. ALSO DISCOVERY AND APPEAL
> RIGHTS ARE LIMITED IN ARBITRATION.

ECF No. 40-1 at 1–2.  In response, Plaintiff argues that the Arbitration Clause is so broad that it must be rejected because "no reasonable person would have understood themselves to be signing away their right to litigate virtually any claim regardless of its relation to the underlying agreement, and unlimited in time, simply by virtue of using a credit card." ECF No. 45 at 1.  Plaintiff next argues that even if the Court were to find that there was a valid agreement to arbitrate here, Plaintiff's FCRA claims are not within the scope of the Arbitration Clause because FCRA is not mentioned in the Cardmember Agreement. Id. at 2–3.  Finally, Plaintiff argues that even if there is a valid agreement to arbitrate and his FCRA claims fall within its scope, it would be unconscionable for the Court to enforce the Arbitration Clause as written because doing so would lead to absurd results. Id. at 32–33.

## II.   **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "places arbitration agreements on equal footing with all other contracts.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).  Pursuant to the FAA, courts "compel arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon*, 959 F.3d at 599 (citing FAA, 9 U.S.C. §§ 3, 4).  Yet despite the strong presumption of arbitrability, "[a]rbitration is strictly a matter of contract" and is thus governed by state law. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so.").  Accordingly, when deciding whether to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the

3

parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (internal citation omitted). In conducting this inquiry, the Court applies state law principles of contract formation. *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018).

## III.   DISCUSSION

### A. Determining the Appropriate Standard of Review

In deciding whether a valid arbitration agreement exists between the parties, the Court must first decide whether to apply the Rule 12(b)(6) or Rule 56 standard of review. *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Court will review a motion to compel arbitration under the Rule 12(b)(6) standard "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause . . . .'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted). Conversely, the Rule 56 standard will apply "when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774 (internal citations omitted).

Here, there is no dispute that the Cardmember Agreement contains the Arbitration Clause and that Plaintiff accepted the Cardmember Agreement. Instead, Plaintiff asserts a purely legal argument that the Arbitration Clause is not an agreement to arbitrate because no reasonable person

would agree to such a broad waiver of rights. ECF No. 45 at 10.[2]  Under this scenario, where no

discovery is needed (as Plaintiff himself states),[3] the Court finds that the motion to compel

arbitration should be reviewed under the 12(b)(6) standard discussed above. *See Joaquin v. Directv

Grp. Holdings*, Inc., No. 15-8194, 2016 WL 4547150, at *3 (D.N.J. Aug. 30, 2016) ("Plaintiff's

unsupported legal conclusion is not sufficient under *Guidotti* to apply the summary judgment

standard to Defendants' motions to compel arbitration."); *see also Fisher v. Trans Union, LLC.*,

No. 19-679, 2019 WL 2248696, at *2 (E.D. Pa. May 23, 2019) (applying 12(b)(6) standard to

challenge the same Discover Arbitration Clause that is present in this case as Plaintiff asserted "a

legal, rather than factual, challenge to arbitrability.").

Having determined that the Motion should be reviewed under Rule 12(b)(6), the Court

must conduct the two-step analysis outlined by the Third Circuit and determine whether there is a

valid agreement to arbitrate, and if there is, whether Plaintiff's claim falls within the scope of that

agreement. *Flintkote Co.*, 769 F.3d at 220.  Plaintiff maintains there is no agreement to arbitrate

because no reasonable person would agree to arbitrate any claim against Discover, rendering the

agreement invalid under Delaware law. ECF No. 45 at 12.[4]  Defendant responds that Plaintiff fails

---

[2] Plaintiff's argument that the Complaint does not rely on or incorporate the Cardmember Agreement is unavailing as his claims against Discover are based on his credit account with Discover, which was opened when he signed the Cardmember Agreement containing the Arbitration Clause. *See* ECF No. 1 at 4 ("[T]he Bureaus prepared and issued credit reports concerning the Plaintiff that included inaccurate information relating to his Discover Bank credit card."); *see also Albany Cty. Fasteners v. Epicor Software Corp.*, No. 18-17214, 2019 WL 397986, at *2 (D.N.J. Jan. 31, 2019).  Moreover, Plaintiff does not argue that discovery is needed and notes that the essential terms of the Arbitration Clause are undisputed. ECF No. 45 at 7.  Accordingly, if the Court did review this matter under Rule 56, the outcome would likely be the same.

[3] "However, neither does it make sense for the Court to dismiss this motion and order the parties to conduct limited discovery on the question of whether an agreement to arbitrate was ever concluded . . . because this is a question of law for the Court to consider based on well-established principals of contract law in the state of Delaware." ECF No. 45 at 7.

[4] Both parties agree that Delaware law governs the Cardmember Agreement. *See* ECF No. 40-1 at 7; ECF No. 45 at 12.

to cite any Third Circuit decisions which find an arbitration agreement invalid because it is impermissibly broad, and attempts to distinguish Plaintiff's cited authority from the Seventh Circuit, the Southern District of California, the Eastern District of New York, and the Northern District of Georgia. ECF No. 52 at 9.  Defendant further notes that the exact same Arbitration Clause at issue in this case was challenged by a Plaintiff in the Eastern District of Pennsylvania, and the District Court there found an agreement to arbitrate and compelled the FCRA claim to arbitration. Id. at 19 (citing *Fisher*, 2019 WL 2248696).

### B.  There was an Agreement to Arbitrate

The Court finds no support for Plaintiff's position that the Arbitration Clause could not be accepted by any reasonable person because of its breadth and agrees with Defendant that Plaintiff's out-of-circuit authority are distinguishable. The Court notes for instance, that throughout this District numerous decisions have upheld arbitration agreements with similarly broad language in the past year. *See, e.g.*, *Petrozzino v. Vivint, Inc.*, No. 20-01949, 2020 WL 7778039, at *3 (D.N.J. Dec. 31, 2020) (granting motion to compel arbitration where arbitration agreement covered any claims "directly or indirectly arising out of, relating to, or in connection with the Agreement regardless of what legal theory"); *Ranginwala v. Citibank, N.A.*, No. 18-14896, 2020 WL 6817508, at *1 (D.N.J. Nov. 19, 2020) (granting motion to compel arbitration where arbitration agreement covered "any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related account or our relationship"); *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *3 (D.N.J. Aug. 26, 2020) (granting motion to compel arbitration where arbitration agreement stated "[y]ou and we agree that any claim or dispute arising from or in any way related to the Agreement must be resolved by binding arbitration").  Notably, the Arbitration Clause in this matter is not without limits, as it expressly excludes claims "challenging

6

the validity or enforceability of this arbitration agreement" and further clarifies that included claims are "claims and disputes relating to any other Account or agreement you have or had with us." ECF No. 40-1 at 1–2.  The Court cannot conclude that this language is so broad and unacceptable that no reasonable consumer would agree to it, especially given its similarity to language in arbitration agreements that have been upheld as valid in this District recently.

Turning to Plaintiff's out-of-circuit authority, the Court notes that in *Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003), Plaintiff Smith signed two separate loan agreements – one that contained an arbitration clause and one that did not. *Id.* at 777.  The Defendant who loaned money to Smith in both instances tried to argue that the arbitration clause in the first loan agreement applied to the second loan agreement, but that argument was rejected by the district court and by the Seventh Circuit. *Id.* at 778 ("All that is certain is that the waiver agreement, read sensibly and as a whole, with careful attention to the relation among the clauses, does not apply to future disputes, including disputes over future loan agreements.").  *Steinkamp* is thus of limited persuasive value here, as this matter only involves one Cardmember Agreement which did contain the Arbitration Clause and Plaintiff's claim against Discover is directly related to the Cardmember Agreement that he ratified. *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012) is also distinguishable from the instant matter.  In that case, the District Court noted that the language of the arbitration agreement was "incredibly broad," but it did not find the agreement invalid on that basis.   Instead, the Court simply held that Plaintiff's claims under the Telephone Consumer Protection Act for spam text messages were not related to his agreement, that contained an arbitration clause, to pay for oil change services with Defendants. *Id.* at 1263.  Plaintiff's reliance on *Hearn v. Comcast Cable Communs., LLC*, 415 F. Supp. 3d 1155 (N.D. Ga. 2019) is similarly misplaced because there the District Court declined to apply an arbitration provision from

Plaintiff's 2016 service contract with Comcast to Plaintiff's claims for violation of FCRA which were completely unrelated to the service performed on Plaintiff's utilities and occurred after Plaintiff had terminated his contract with Comcast. *Id.* at 1165–66.

The decision in *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016) is also distinguishable. In that case, the Plaintiff signed a contract for wireless phone service from Mobility, a subsidiary of AT&T, containing an arbitration clause but later filed suit over unsolicited text messages and calls regarding U-Verse television and internet service, a separate AT&T subsidiary. *Id.* at 501–502.  AT&T argued that the arbitration agreement Plaintiff signed with Mobility meant that Plaintiff's claims against U-Verse had to be arbitrated, but the Court rejected that argument holding "no reasonable person would think that checking a box accepting the 'terms and conditions' necessary to obtain cell phone service would obligate them to arbitrate literally every possible dispute he or she might have with the service provider, let alone all of the affiliates under AT&T Inc.'s corporate umbrella—including those who provide services unrelated to cell phone coverage." *Id.* at 504.  While *Wexler* does take issue with overly broad arbitration agreements, AT&T's attempt to bind a consumer to arbitration with one subsidiary that the consumer never contracted with through the consumer's contact with another subsidiary is quite different than what took place in this matter.  Here, in stark contrast, Discover and Plaintiff entered into one Cardmember Agreement and that Cardmember Agreement contained the Arbitration Clause.  As such, *Wexler* does not require this Court to find that no reasonable consumer could agree to the language of the Arbitration Clause.

As the Court finds no support in the Third Circuit for Plaintiff's argument that no reasonable consumer would agree to the language of the Arbitration Clause and finds Plaintiff's

out-of-circuit decisions distinguishable, the Court finds there was an agreement to arbitrate between Plaintiff and Defendant.

### C.  Plaintiff's Claims Fall within the Scope of the Agreement to Arbitrate

Having found that an agreement to arbitrate exists between the parties, the Court must next determine if Plaintiff's claims fall within the scope of that agreement. *Flintkote Co.*, 769 F.3d at 220.  Plaintiff concedes that, if a valid agreement to arbitrate exists, [t]here is a well-established presumption favoring arbitration." ECF No. 45 at 11; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (internal citations and quotation marks omitted) ("Moreover, the "presumption in favor of arbitrability is particularly applicable where the arbitration clause is broad.").

Plaintiff nonetheless argues that his FCRA claims do not fall within the scope of the Arbitration Clause because "[n]owhere in the underlying credit agreement can there be found any reference to credit reporting." Id. at 29.  While it is true that the Arbitration Clause and Cardmember Agreement do not refer to credit reporting or FCRA, Plaintiff has not cited any authority (and the Court is aware of none) that requires an arbitration agreement to specifically refer to the causes of action which are subject to arbitration. Instead, looking at the subject of the Cardmember Agreement – Plaintiff's credit card account with Discover – and the subject of Plaintiff's claims – Discover's alleged improper reporting of Plaintiff's credit card account – it is clear that Plaintiff's FCRA claims fall within the scope of the Arbitration Clause. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014) (internal citations and quotation marks omitted) ("In assessing whether a particular dispute falls within the scope of an arbitration

clause, we focus on the factual underpinnings of the claim rather than the legal theory alleged in the complaint.").  The Court thus finds that Plaintiff's FCRA claims against Discover are within the scope of the Arbitration Clause.

### D.  Compelling Arbitration Here is not Unconscionable

As the Court has found the parties entered into an arbitration agreement that encompasses Plaintiff's FCRA claims, the final inquiry necessary is to determine whether compelling arbitration would be unconscionable.  Plaintiff's arguments here mirror his arguments regarding whether a reasonable consumer would agree to the language of the Arbitration Clause and he maintains that "absurd results" will ensue if the Motion to compel arbitration is granted. ECF No. 45 at 33.  As discussed above, Plaintiff's arguments with respect to the reasonable consumer are unsupported by the law of this Circuit and this Court fails to see how compelling arbitration of claims of improper credit reporting is absurd when the credit card was issued pursuant to an agreement that contains a broad Arbitration Clause.  Plaintiff's unconscionability arguments are therefore denied.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion to compel arbitration and stay proceedings (ECF No. 40) is **GRANTED**. An appropriate Order accompanies this Opinion.


**DATE:** February 19, 2021


**CLAIRE C. CECCHI, U.S.D.J.**